```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**DONALD CUTLIP,**

       Plaintiff,

**WILMINGTON SAVINGS FUND SOCIETY,**
FSB, as Trustee of Quercus Mortgage
Investment Trust,

       Intervenor-Plaintiff,

                                        Civil Action No. 1:21CV138
v.                                        (Judge Keeley)

**G. RUSSELL ROLLYSON, JR.,**
Deputy Commissioner of Delinquent
and Non-entered Lands of Harrison
County, West Virginia, in his Official
and Personal Capacities, and
**WVTH, LLC,**

       Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO INTERVENE AS PLAINTIFF PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2) [DKT. NO. 21]**

Pending is the motion to intervene as plaintiff pursuant to Federal Rule of Civil Procedure 24 filed by Wilmington Savings Fund Society, FSB ("Wilmington"), as Trustee of Quercus Mortgage Investment Trust (Dkt. No. 21). For the reasons that follow, the Court **GRANTS** the motion.

**CUTLIP v. ROLLYSON**                                                    **1:21CV138**

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO INTERVENE AS PLAINTIFF PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2) [DKT. NO. 21]**

### I. BACKGROUND

**A. Factual Allegations in the Complaint**

On November 11, 2021, Donald Cutlip ("Cutlip") filed suit against G. Russell Rollyson, Jr., ("Rollyson"), Deputy Commissioner of Delinquent and Non-entered Lands of Harrison County, West Virginia, in his official and personal capacities, and WVTH LLC ("WVTH") (Dkt. No. 1).

According to the complaint, at all times after March 29, 2012, Cutlip possessed fee simple title to the real estate at 57 Waterside Drive, Enterprise, Harrison County, West Virginia ("the Property"). Id. at 3.[1] He originally purchased the Property with a loan guaranteed by the United States Department of Veterans Affairs. Id. at 4. Since that time, however, he has refinanced multiple times, most recently on December 21, 2017, with Low VA Rates LLC, a West Virginia licensed home mortgage lender. Id.

As part of the refinancing agreement, Cutlip signed a promissory note and deed of trust in favor of Low VA Rates LLC.

---

[1] Cutlip originally jointly obtained title with his then-wife, Amanda Cutlip (Dkt. No. 1 at 3). However, following their divorce on February 11, 2020, he obtained exclusive ownership. Id. at 3-4.

**CUTLIP v. ROLLYSON**                                                                                   **1:21CV138**

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO INTERVENE AS PLAINTIFF PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2) [DKT. NO. 21]**

Id. Pursuant to that agreement, he agreed to make monthly payments to Low VA Rates LLC's servicer, AnnieMac Home Mortgage, which then was required to pay his real estate taxes. Id. at 5. In accordance with standard industry practice, Low VA Rates LLC and AnnieMac Home Mortgage made arrangements with Harrison County tax officials to send all post-December 2017 real estate tax bills directly to them and not Cutlip. Id. Cutlip allegedly paid all his monthly mortgage payments after December 21, 2017, and Low VA Rates LLC never disclosed an issue with the payment of his taxes following refinancing. Id.

Nevertheless, in November 2019, due to unpaid taxes for 2018, the Sheriff of Harrison County, West Virginia, sold a tax lien on the Property to WVTH. Id. at 6. Although required by W. Va. Code § 11A-3-2(b),[2] Cutlip never received written notice from the sheriff of the proposed sale, and he also was unaware of the unpaid

---

[2] W. Va. Code §§ 11A-3-1 to -74 was amended effective June 10, 2022. S. 552, 2022 Reg. Sess. (W. Va. 2022) (enacted). However, because the events here occurred prior to June 10, 2022, the prior statutory scheme applies in this case, and all citations are to the prior statutes. Syl. Pt. 2, Martinez v. Asplundh Tree Expert Co., 803 S.E.2d 582 (W. Va. 2017) ("The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect.")

**CUTLIP v. ROLLYSON**                                                1:21CV138

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO INTERVENE AS PLAINTIFF PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2) [DKT. NO. 21]**

taxes for 2018 because neither Low VA Rates LLC nor the sheriff notified him. Id. at 5-6.

Following purchase of the tax lien, WVTH never demanded of Cutlip that he pay the lien or the other costs and interest related to the sale. Id. at 6. In October 2020, when WVTH applied to Rollyson for the execution of a tax deed to transfer legal title of the Property, Rollyson failed to notify Cutlip of his right to redeem the Property as required under W. Va. Code §§ 11A-3-1 to -74. Id. at 6-7. Specifically, Cutlip never received or signed the certified mail notice, and Rollyson's hired process server allegedly falsified a return of service, stating it had served Cutlip on April 13, 2021, at 6:40 P.M., at which time he was allegedly out of town at a job interview. Id.

Prior to service, however, on April 1, 2021, Rollyson certified in writing that he had served the notice to redeem on all persons entitled to be served. Id. at 8. And that same day, he executed a tax deed transferring legal title of the Property to WVTH, which then recorded the deed. Id.

Based on these allegations, Cutlip asserts the following two causes of action: (1) deprivation of the Property without due

4

**CUTLIP v. ROLLYSON**  1:21CV138

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO INTERVENE AS PLAINTIFF PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2) [DKT. NO. 21]**

process of law; and (2) deprivation of the Property in violation of the West Virginia tax sale statutory scheme, W. Va. Code §§ 11A-3-1 to -74. Id. at 9-10. In addition to monetary relief, Cutlip also seeks declaratory and injunctive relief to void the tax deed. Id.

**B. Motion to Intervene**

On July 27, 2022, Wilmington moved to intervene as plaintiff in this case under Federal Rule of Civil Procedure 24 (Dkt. No. 21). In support of its motion, Wilmington alleges that, after Cutlip began to fall behind on his mortgage payments for the Property, Low VA Rates LLC transferred the underlying promissory note to Wilmington to begin foreclosure proceedings. (Dkt. No. 21-1 at 4). In late May 2022, however, Wilmington discovered this lawsuit during a title search and placed the foreclosure proceedings on hold. Id.

Wilmington seeks to intervene and void the tax deed. It contends that it has satisfied the requirements both for intervention of right and also permissive intervention under Federal Rule of Civil Procedure 24 (Dkt. No. 21-1 at 12-14). Should it be permitted to intervene, Wilmington intends to argue that the

**CUTLIP v. ROLLYSON** 1:21CV138

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO INTERVENE AS PLAINTIFF PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2) [DKT. NO. 21]**

West Virginia tax sale statutory scheme, W. Va. Code §§ 11A-2-1 to -19 and 11A-3-1 to -74, both on its face and as applied, fails to provide adequate notice and thus violates the constitutional guarantee of due process under the Fifth and Fourteenth Amendments of the Constitution of the United States. Id. at 6-12.

Cutlip has consented to Wilmington's intervention, id. at 14, and the defendants have not responded within their designated time under Local Rule of Civil Procedure 7.02(b)(1). The Court therefore deems the motion fully briefed and ripe for decision.

## II. APPLICABLE LAW

A movant has a right to intervene if it "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "Thus, in addition to timeliness, intervention of right is dependent on the moving party's fulfillment of three requirements: interest, impairment of interest and inadequate representation." Gould v. Alleco, Inc., 883 F.2d 281, 284 (4th Cir. 1989).

6

**CUTLIP v. ROLLYSON**                                                  **1:21CV138**

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO INTERVENE AS PLAINTIFF PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2) [DKT. NO. 21]**

However, if a movant cannot meet the standard to intervene as of right, the court may permit the movant to intervene if it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Moreover, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Id. 24(b)(3).

Under either mode of intervention, "[t]he motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).

### III. DISCUSSION

Following a review of Wilmington's unopposed arguments and the facts of this case, the Court concludes that Wilmington has a right to intervene under Federal Rule of Civil Procedure 24(a)(2).

**A. Timeliness**

District courts are afforded "wide discretion" in ruling on the timeliness of a motion to intervene. Gould, 883 F.2d at 286. Courts should consider "how far the suit has progressed, the prejudice which delay might cause other parties, and the reason

7

**CUTLIP v. ROLLYSON**                                                              1:21CV138

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO INTERVENE AS PLAINTIFF PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2) [DKT. NO. 21]**

for the tardiness in moving to intervene." Id. The most important factor, however, is whether granting the motion will result in prejudice to the existing parties. United States v. Exxonmobil Corp., 264 F.R.D. 242, 248 (N.D. W. Va. 2010).

This case is currently in the discovery phase, which is scheduled to ends on December 9, 2022 (Dkt. No. 9). It is not set for trial until May 22, 2023. Id. Wilmington asserts that, "within the first few months of intervening," it will be able to issue additional discovery requests and review existing production (Dkt. No. 21-1 at 13-14). Accordingly, any delay likely will be minor and none of the existing parties have argued a delay would prejudice them.

When Wilmington filed its motion to intervene on July 27, 2022 (Dkt. No. 21), it asserted that it only discovered this lawsuit in "late May 2022" and, before filing its motion, had gathered information on the factual allegations in the complaint (Dkt. No. 21-1 at 14). Thus, by its own account, Wilmington took roughly two months to file its motion after discovering this case. Therefore, taking into account the stage of the case, the lack of

8

**CUTLIP v. ROLLYSON** 1:21CV138

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO INTERVENE AS PLAINTIFF PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2) [DKT. NO. 21]**

any alleged prejudice, and Wilmington's prompt filing, the Court concludes that the motion is timely.

**B. Interest Relating to the Property**

Federal Rule of Civil Procedure 24 "does not specify what type of interest a party must have to intervene as a matter of right, but the Supreme Court has recognized that '[w]hat is obviously meant . . . is a significantly protectable interest.'" JLS, Inc. v. Pub. Serv. Comm'n of W. Va., 321 F. App'x 286, 289 (4th Cir. 2009) (quoting Teague v. Bakker, 931 F.2d 259, 261 (4th Cir. 1991)).

Here, Wilmington alleges that, after Cutlip began to fall behind on mortgage payments for the Property, Low VA Rates LLC transferred the underlying promissory note to Wilmington to begin foreclosure proceedings. In other words, Wilmington is the successor-in-interest to Low VA Rates LLC as the beneficiary on the promissory note, and as such, has a "significantly protectable interest" in the Property under West Virginia law. JLS, Inc., 321 F. App'x at 289 (quoting Teague, 931 F.2d at 261). Specifically, Wilmington was entitled to redeem the property and then initiate foreclosure proceedings. See Syl. Pt. 1, Wells Fargo Bank, N.A. v.

9

**CUTLIP v. ROLLYSON** 1:21CV138

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO INTERVENE AS PLAINTIFF PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2) [DKT. NO. 21]**

UP Ventures II, LLC, 675 S.E.2d 883 (W. Va. 2009) ("[A] tax sale purchaser is required to provide notice [of the right to redeem] to parties who are of record at any time after the thirty-first day of October of the year following the sheriff's sale, and on or before the thirty-first day of December of the same year."); Arnold v. Palmer, 686 S.E.2d 725, 733 (W. Va. 2009) ("[A] lending institution may require the trustee of a valid deed of trust to initiate foreclosure proceedings on the property subject to the deed of trust.").

**C. Impairment of Interest**

Denying Wilmington the right to intervene would substantially impair its interest in the Property. Rollyson allegedly executed a tax deed on April 1, 2021, transferring legal title of the Property to WVTH, which subsequently recorded the deed. Under West Virginia law,

> Whenever the purchaser of any tax lien on any real estate sold at a tax sale . . . has obtained a deed for the real estate from the State Auditor . . . , he or she or they shall acquire all right, title and interest, in and to the real estate, as was, at the time of the execution and delivery of the deed, vested in or held by any person who was entitled to redeem.

**CUTLIP v. ROLLYSON**  1:21CV138

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO INTERVENE AS PLAINTIFF PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2) [DKT. NO. 21]**

W. Va. Code § 11A-3-30. Accordingly, were WVTH or any of its successors to retain title to the Property, Wilmington's interest would be extinguished, leaving it unable to exercise its right to redeem the Property and conduct foreclosure proceedings.

**D. Adequate Representation**

Where, as here, "the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976).[3] However, as the Supreme Court has noted, "the burden on the [petitioner] of demonstrating a lack of adequate representation 'should be treated as minimal.'" Teague v. Bakker, 931 F.2d 259, 262 (4th Cir. 1991) (quoting Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)).

Although both Wilmington and Cutlip seek the "same ultimate objective" – the invalidation of the tax deed, Westinghouse Elec.

---

[3] The Supreme Court's recent decision in Berger v. North Carolina State Conference of the NAACP, 142 S. Ct. 2191, 2204 (2022), held only "that a presumption of adequate representation is inappropriate when a duly authorized state agent seeks to intervene to defend a state law." It did not hold that such a presumption was always inappropriate.

11

Case 1:21-cv-00138-IMK Document 22 Filed 09/16/22 Page 12 of 13 PageID #: 256

**CUTLIP v. ROLLYSON** 1:21CV138

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO INTERVENE AS PLAINTIFF PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2) [DKT. NO. 21]**

Corp., 542 F.2d at 216, Cutlip alleges that Low VA Rates LLC's servicer, AnnieMac Home Mortgage, failed to properly pay real estate taxes on the Property. Stated differently, Cutlip claims that the conduct of Wilmington's successor-in-interest was at least partially responsible for the transfer of the property. Accordingly, while Wilmington's ultimate objective is the same as Cutlip's, the allegations against Low VA Rates LLC establish adversity of their interests. Cutlip thus cannot adequately represent Wilmington in this lawsuit.

Wilmington therefore may intervene as of right in this case because it has satisfied the requirements of Federal Rule of Civil Procedure 24(a)(2). The Court thus need not determine whether to permit Wilmington to intervene under Federal Rule of Civil Procedure 24(b)(1)(B).

### IV. CONCLUSION

For the reasons discussed, the Court **GRANTS** Wilmington's motion to intervene. Wilmington **SHALL** have until **Friday, October 14, 2022**, to file a complaint, and as necessary, the parties **SHALL** submit an amended Rule 26(f) Report at that time.

It is so **ORDERED**.

**CUTLIP v. ROLLYSON** 1:21CV138

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO INTERVENE AS PLAINTIFF PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2) [DKT. NO. 21]**

The Clerk **SHALL** transmit copies of this Order to counsel of record.

DATED: September 16, 2022

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE